IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**CHRISTEEN OSBORN,** by
and through her Conservator
Charles Petit,

      Plaintiff,

      v.

**METROPOLITAN LIFE INSURANCE COMPANY,**

      Defendant.

No. 3:15-cv-00605-MO

OPINION AND ORDER

**MOSMAN, J.**,

The issue is the appropriate standard of review to apply in review of Defendant MetLife's decision to deny coverage for Plaintiff Christeen Osborn's claim for Accidental Death and Dismemberment insurance. The parties have filed motions for partial summary judgment on this issue. Specifically, Plaintiff Osborn moves for an order that *de novo* review will be applied while Defendant MetLife contends that the standard of review is abuse of discretion. I find the appropriate standard of review in this case is abuse of discretion. I DENY Plaintiff Osborn's Motion [14] and GRANT Defendant MetLife's Motion [15].

**I.    FACTS**

This is an ERISA benefits case in which Plaintiff Christeen Osborn, M.D., claims that MetLife wrongfully denied her claim for $1.25 million in accidental death and dismemberment ("AD&D") benefits under the Providence Health & Services Welfare Benefit Plan (the Program). The Program is an ERISA-governed welfare benefit plan which consists of several component plans, including a

1 –OPINION AND ORDER

Participating Life and AD&D Insurance Plan. Documents like the Program are typically prepared by employers in order to provide an overall structure to the menu of benefits available to its employees. This type of document often incorporates by reference the various group health, life, and disability insurance policies that provide the actual coverage for the employees. Benefits under the Program's Participating Life and Insurance Plan are funded through a group life and AD&D insurance policy that MetLife issued to Dr. Osborn's employer, Providence Health & Services (PHS), the Program's sponsor and administrator.

In July 2012, Dr. Osborn was involved in a bicycling accident. In January 2013, she applied for AD&D benefits, claiming to be entitled under the Program's brain damage provision. In November 2013, MetLife determined that Dr. Osborn was not entitled to AD&D benefits because her brain injury did not result in a complete inability to perform the substantial and material activities of everyday life. Dr. Osborn appealed MetLife's denial of benefits, and in January 2015, MetLife denied Dr. Osborn's appeal. Dr. Osborn then brought this action under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B).

**II.    DISCUSSION**

For claims brought under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B), a threshold issue is whether the standard of review is *de novo* or abuse of discretion. Unless the ERISA plan documents contain an unambiguous grant of discretionary authority, the default standard for reviewing the denial of benefits under an ERISA plan is *de novo. Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). Dr. Osborn asserts three independent reasons why the standard of review should be *de novo* in this case: 1) the relevant plan documents do not contain the unambiguous grant of discretionary authority required to overcome the *de novo* presumption; 2) there is a conflict between the Certificate of Insurance and the Program and therefore the terms of the Certificate of Insurance, which

does not contain an unambiguous grant of discretion, controls; and 3) any conveyance of discretionary authority is void under Washington law. I find these arguments are unpersuasive under the present circumstances. For the following reasons, I hold that MetLife's denial of benefits will be reviewed for abuse of discretion.

### A. Unambiguous Grant of Discretion to the Plan Administrator

Dr. Osborn first argues MetLife does not carry its burden to demonstrate that the language of the Program plainly and unambiguously grants discretionary authority to the plan administrator to construe the terms of the Program's Participating Life and AD&D Insurance Plan and make benefit determinations. "The default is that the administrator has no discretion, and the administrator has to show that the plan gives it discretionary authority in order to get any judicial deference to its decision." *Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1089 (9th Cir. 1999) (en banc). When a court assesses the applicable standard of review, "the starting point is the wording of the plan." *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 962–63 (9th Cir. 2006) (en banc). No magic words need appear in the plan document to confer discretion. *See id.* at 963 (citations omitted). Ultimately, however, the grant of discretionary authority to the plan administrator must be unambiguous. *Sandy v. Reliance Standard Life Ins. Co.*, 222 F.3d 1202, 1207 (9th Cir. 2000) ("[U]nless plan documents unambiguously say in sum or substance that the Plan Administrator or fiduciary has authority, power, or discretion to determine eligibility or to construe the terms of the Plan, the standard of review will be de novo."). An unambiguous grant of discretionary authority is one that is so clear it cannot be interpreted to have any other meaning. *Kearney*, 175 F.3d at 1090. Plan terms which merely identify the administrator's tasks but bestow no power to interpret the plan are insufficient to confer discretionary authority. *Ingram v. Martin Marietta Long Term Disability Income Plan for Salaried Employees of Transferred GE Operations,* 244 F.3d 1109, 1113 (9th Cir. 2001).

3 –OPINION AND ORDER

MetLife contends that both Section 9.2 and Supplement E of the Program plainly and unambiguously grant discretionary authority to the plan administrator sufficient to trigger abuse of discretion review. Section 9.2 of the Program, entitled "Claims Procedure for ERISA Participating Plans," provides that "[b]enefits shall be paid under the Program only if the Program Administrator or Claims Administrator determines *in its discretion* that the applicant is entitled to them." (The Program, Doc. 18, Ex. A at 38 (emphasis added).) Dr. Osborn argues that while Section 9.2 may constitute a grant of discretionary authority to determine eligibility for benefits, it does not grant the administrator discretion to construe the terms of the plan, and the latter is what is necessary to overcome the default *de novo* review. In support of this argument, Dr. Osborn relies on *Abatie*, in which the Ninth Circuit stated that "ERISA plans are insufficient to confer discretionary authority on the administrator when they do not grant any power to construe the terms of the plan." 458 F.3d at 964. While at first blush this language appears to support Dr. Osborn's argument that a grant of discretion must necessarily include authority to interpret the terms of the plan, a closer review of *Abatie* and other cases reveal that a grant of discretionary authority to determine eligibility of benefits is sufficient to trigger abuse of discretion review.

In stating that the power to construe the terms of the plan is necessary to confer discretionary authority on the plan administrator, the *Abatie* court relied exclusively on *Ingram*, 244 F.3d 1109. *See Abatie*, 458 F.3d at 964. In *Ingram*, the Ninth Circuit had held that *de novo* review applied because the insurance plan provisions at issue merely identified the plan administrator's tasks but did not bestow any power to interpret the plan. *Id.* at 1113. This holding does not appear to be based on any absence of authority to specifically interpret the *terms* of the plan, but rather it was because the plan said "nothing about the merits of MetLife's substantive claims decisions, and nothing about whether those decisions are discretionary." *Id.* Here, unlike in *Ingram*, MetLife's authority to determine eligibility for benefits

constitutes "substantive claims decisions" and, according to the terms of Section 9.2, those decisions are at MetLife's discretion.

Although Dr. Osborn is correct in asserting that Section 9.2 does not grant MetLife discretion to interpret the terms of the plan, she is incorrect to assert such a grant is necessary. In *Firestone Tire & Rubber Co v. Bruch*, the seminal case on the standard of review in 29 U.S.C. § 1132(a)(1)(B) actions such as this one, the Supreme Court held:

> [T]he validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue. Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits **or** to construe the terms of the plan.

*Firestone*, 489 U.S. at 115 (emphasis added); *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (where an ERISA plan grants "the administrator or fiduciary *discretionary* authority to determine *eligibility for benefits*, trust principles make a *deferential standard* of review appropriate") (quoting *Firestone*) (emphasis added) (citations omitted). *Firestone*'s use of the disjunctive "or" compels me to hold that *either* the discretion to determine eligibility for benefits *or* the discretion to interpret the terms of the plan are sufficient grants of discretionary authority.

The Ninth Circuit has so held on numerous occasions. *See Muniz v. Amec Const. Manage., Inc.*, 623 F.3d 1290, 1295 (9th Cir. 2010) ("The abuse-of-discretion standard is used to review a benefits decision when . . . 'the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'") (quoting *Firestone*, 489 U.S. at 115); *Prichard v. Metro. Life Ins. Co.*, 783 F.3d 1166, 1171 (9th Cir. 2015); *Feibusch v. Integrated Device Tech., Inc. Emp. Benefits Plan*, 463 F.3d 880, 884 (9th Cir. 2006) ("The administrator's burden to demonstrate insulation from *de novo* review requires *either* language stating the award of benefits is within the discretion of the plan administrator *or* language that is plainly the functional equivalent of

5 –OPINION AND ORDER

such wording.") (emphasis added) (internal quotes omitted). So have other district courts in the Ninth Circuit. *See, e.g.*, *Bledsoe v. Metro. Life Ins.*, 90 F. Supp. 3d 901, 909 (C.D. Cal. 2015) ("A court reviews the benefit plan *de novo* unless the benefit plan gives the administrator or fiduciary discretionary authority *to determine eligibility for benefits*; if the plan does grant such discretionary authority, the Court reviews the administrator's decision for abuse of discretion.") (emphasis added) (internal quotation omitted).

The Supreme Court and Ninth Circuit case law support MetLife's position that there are two ways an ERISA plan document will trigger abuse of discretion review in a § 1132(a)(1)(B) case: (1) when the plan grants the administrator discretionary authority to determine eligibility for benefits; **or** (2) when the plan grants the administrator discretion to construe the terms of the plan. Here, Section 9.2 clearly grants MetLife discretion to determine eligibility for benefits under the Participating Life and AD&D Insurance Plan. Therefore, Section 9.2 constitutes an unambiguous grant of discretion that triggers abuse of discretion review. Furthermore, because I hold that Section 9.2 contains unambiguous discretionary language, it is unnecessary for me to determine whether such a grant of discretionary authority also exists in Supplement E.

**B. Conflict between Section 9.2 of the Program and the Certificate of Insurance**

Dr. Osborn argues even if Section 9.2 of the Program contains an unambiguous grant of discretionary authority, such a grant of discretion creates a direct conflict between the Program and the Certificate of Insurance and triggers Supplement E's "Resolution of Conflicts" provision. Paragraph E-7 of Supplement E says:

> E-7. <u>Resolution of Conflicts</u>. *If there is a conflict between the Program document*, this SUPPLEMENT E, *the insurance policy and certificate of insurance*, or the applicable Summary Plan Description, *the terms of the insurance policy and certificate of insurance control* to the extent they do not conflict with applicable law. . . .

(The Program, Doc. 18, Ex. A at 68 (emphasis added).) While Section 9.2 contains an unambiguous grant of discretion, Dr. Osborn contends that the Certificate of Insurance does not, thus creating a conflict between the two documents. And, according to Paragraph E-7, if there is a conflict between these two documents, the terms of the Certificate of Insurance control.

While MetLife concedes that the Certificate of Insurance does not contain a discretionary clause, it argues there is no conflict with Section 9.2 because the Certificate of Insurance is silent as to whether there is a grant of discretion. The Ninth Circuit and other courts have held a conflict does not exist when one ERISA Plan document is silent on a topic that is addressed in another Plan document. *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1321 (9th Cir. 1995) (holding that even though the summary plan description (SPD) did not include discretionary language, the grant of discretionary authority in the plan controlled) *overruled on other grounds, Abatie*, 458 F.3d 955; *Lafferty v. Providence Health Plans*, 706 F. Supp. 2d 1104, 1111 (D. Or. 2010) ("The Ninth Circuit, and the majority of other jurisdictions which have considered this issue, have concluded that silence in the SPD regarding language contained within the plan is not necessarily a conflict.") *reversed on other grounds*, 436 Fed. Appx. 780 (9th Cir. 2011); *Lee v. Kaiser Found. Health LTD Plan*, 812 F. Supp. 2d 1027, 1035 (N.D. Cal. 2011) ("[T]he court concludes that the [SDP] and the Flexible Benefits Plan's silence does not create a conflict with the Welfare Benefits Plan and Certificate of Insurance."); *see also Shaw v. Prudential Ins. Co. of America*, 566 Fed. Appx. 536, 538–39 (8th Cir. 2014) (holding that abuse of discretion standard applied even though the AD&D policy at issue did not contain discretion-granting language since other plan documents unambiguously granted such authority, including a wrap-plan document that provided a clear and explicit grant of discretion). If the Certificate of Insurance expressly stated MetLife did not have discretion, then perhaps there would be a direct conflict and the Certificate of Insurance would control per Paragraph E-7. But it does not. The Certificate of Insurance's lack of a discretionary clause does not

7 –OPINION AND ORDER

create a conflict with Section 9.2. Therefore, Paragraph E-7 does not apply, and the Certificate of Insurance does not control over Section 9.2.

### C. Washington's Ban on Discretionary Clauses

Finally, Dr. Osborn argues that even if Section 9.2 contains discretionary language, Washington has banned discretionary clauses and therefore *de novo* review applies. Many states have either banned or restricted the use of discretionary clauses in insurance contracts. Under these restrictions, if an insurance contract contains a discretionary clause, the discretionary clause is simply void. *See, e.g.*, *Cerone v. Reliance Standard Life Ins. Co.*, 9 F. Supp. 3d 1145, 1149 (S.D. Cal. 2014) (holding that a policy's discretionary clause was void and unenforceable as a result of California's statutory ban on discretionary clauses). The Ninth Circuit has held that such state laws are enforceable in ERISA lawsuits because the laws are not preempted by ERISA. *See Standard Ins. Co. v. Morrison*, 584 F.3d 837, 849 (9th Cir. 2009).

Section 12.5 of the Program dictates that Washington law controls "in all matters relating to the Program and the Participating Plans." (The Program, Doc. 18, Ex. A at 49.) Dr. Osborn advances two theories to support her argument that Washington law bans discretionary clauses. First, Dr. Osborn argues Washington has banned discretionary clauses in *all insurance related contracts* issued in Washington under WAC 284-44-015. Second, Dr. Osborn argues that Washington has specifically banned discretionary clauses in all disability insurance policies issued in Washington under WAC 284-96-012.

### 1. Whether WAC 284-44-015 Bans Discretionary Clauses in All Insurance Related Contracts

Dr. Osborn argues that WAC 284-44-015 bans discretionary clauses in all insurance related contracts issued in Washington. However, when looked at in context, WAC 284-44 only applies to health care service contractors. The regulation states:

8 –OPINION AND ORDER

> **WAC 284-44-010 Title and application.** (1) This regulation, WAC 284-44-010 through 284-44-070, is promulgated pursuant to RCW 48.44.050 and 48.44.020, and may be cited as the "Washington state *health care service contractor* regulation."
>
> (2) This regulation, chapter 284-44 WAC, *shall apply to every health care service contractor* (hereinafter referred to as "contractor") registered pursuant to RCW 48.44.015.
>
> **WAC 284-44-015 Discretionary clause prohibited.** (1) No contract may contain a discretionary clause. "Discretionary clause" means a provision that purports to reserve discretion to a carrier, its agents, officers, employees, or designees in interpreting the terms of a contract or deciding eligibility for benefits . . . .

WASH. ADMIN. CODE 284-44-010 through 015 (italics added). For purposes of WAC 284-44, "health care services" means "medical, surgical, dental, chiropractic, hospital, optometric, podiatric, pharmaceutical, ambulance, custodial, mental health, and other therapeutic services." REV. CODE OF WASH. ANN. 48.44.010 (10) (West). MetLife asserts that it is not a health care service contractor and the Participating Life and AD&D Insurance Plan is not a health care service contract, therefore Dr. Osborn's reliance on WAC 284-44-015 is misplaced. I agree. While WAC 284-44-015 clearly prohibits discretionary clauses in the health care services context, it does not ban discretionary clauses such as the one in Section 9.2.

> 2. **Whether the WAC 284-96-012 Ban on Discretionary Clauses in all Disability Insurance Policies Applies to Section 9.2**

WAC 284-96-012 states "[n]o disability insurance policy may contain a discretionary clause." Dr. Osborn argues that the Program's Participating Life and AD&D Insurance Plan is disability insurance, and therefore the discretionary clause contained in Section 9.2 is void. MetLife responds that WAC 284-96-012 does not apply to the Program's Participating Life and AD&D Insurance Plan for four reasons: (1) the regulation only applies to insurance policies; (2) the Washington Insurance Commissioner does not have authority to regulate non-insurance ERISA plan documents such as the Program; (3) the regulation is preempted by ERISA; and (4) even if the regulation applied, this

9 –OPINION AND ORDER

regulation only applies to disability insurance policies and the Participating Life and AD&D Insurance Plan is not disability insurance. Each of MetLife's arguments is discussed below.

### i)  Whether WAC 284-96-012 applies to employee benefit plans

MetLife's first argument is that, on its face, WAC 284-96-012 only applies to insurance policies, not to employee benefit plans like the one at issue here. The Seventh Circuit rejected MetLife's exact argument in *Fontaine v. Metropolitan Life Insurance Company*, 800 F.3d 883 (7th Cir. 2015). In *Fontaine*, MetLife argued "the discretionary clause . . . is not actually in an insurance policy but in an ERISA plan document," therefore the ban on discretionary clauses does not apply. *Id.* at 887. I agree with the Seventh Circuit in characterizing this argument as "hyper-technical" and in noting that "[w]hether a provision for discretionary interpretation is placed in an insurance policy or in a different document is arbitrary and should make no legal difference." *Id.* at 888. If I were to accept MetLife's argument, "then states 'would be powerless to alter the terms of the insurance relationship in ERISA plans; insurers could displace any state regulation simply by inserting a contrary term in plan documents.'" *Id.* (quoting *UNUM Life Ins. Co. v. Ward*, 526 U.S. 358, 376 (1999)). Furthermore, "the artificial distinction that MetLife draws between ERISA plan documents and insurance policies, which are linked together so closely, has no basis in either law or common sense." *Fontaine*, 800 F.3d at 888; *see also Snyder v. Unum Life Ins. Co. of Am.*, 2014 WL 7734715, *8–9 (C.D. Cal. 2014) (rejecting the argument that state prohibitions of discretionary authority provisions cannot indirectly reach ERISA plan documents); *Novak v. Life Ins. Co. of N. Am.*, 956 F. Supp. 2d 900, 906 (N.D. Ill. 2013) ("[P]lacing the discretionary clause in a plan document rather than in the insurance policy would 'elevate form over substance.'") (internal citation omitted). Accordingly, I adopt the reasoning of the Seventh Circuit in *Fontaine* and reject MetLife's first argument that WAC 284-96-012 only applies to insurance policies, not plan documents such as the Program.

### ii) *Whether the Washington Insurance Commissioner has authority to regulate non-insurance plan documents*

MetLife's second argument is that although the Washington Insurance Commissioner may have authority to regulate certain insurance policies, he has no authority to regulate non-insurance plan documents. MetLife contends that ERISA plan documents, such as the Program, are exclusively subject to federal regulation and any ban on discretionary clauses issued by a state insurance commissioner is invalid. Once again, I find this distinction between insurance policies and other plan documents unpersuasive. *See Fontaine*, 800 F.3d at 888 ("[T]he artificial distinction . . . between ERISA plan documents and insurance policies . . . has no basis in law or common sense."). Furthermore, if the Washington Insurance Commissioner has authority to regulate insurance policies as MetLife concedes the Commissioner does, then the Commissioner also has the authority to regulate non-insurance plan documents. *See, e.g.*, *Jahn-Derian v. Metro. Life Ins. Co.*, 2015 WL 900717 at *3–4 (C.D. Cal. March 3, 2015) (rejecting the defendants' argument that a California statute's limitation on discretionary authority extends only to insurance policies and contracts, and that ERISA plan documents are not insurance contracts, stating that "Defendants' argument that the ERISA documents are subject only to federal regulation . . . is unpersuasive. ERISA plans can be indirectly regulated by the State") (citing *Ward*, 526 U.S. at 376). Therefore, I reject MetLife's second argument as to why WAC 284-96-012 only applies to insurance policies and not to plan documents such as the Program.

### iii) *Whether WAC 284-96-012 is preempted by ERISA*

Third, MetLife argues that even if the WAC 284-96-012 ban on discretionary clauses applies to the Program, it is preempted by ERISA. MetLife cites ERISA's express preemption provision, 29 U.S.C. §1144(a), which provides that ERISA "shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan." However, the following provision, 29 U.S.C. § 1144(b)(2)(A), contains what is commonly called the savings clause, saving from preemption any state law "which regulates

11 –OPINION AND ORDER

insurance." Dr. Osborn and MetLife agree that WAC 284-96-012 is a state law that relates an employee benefit plan; however, they disagree on whether WAC 284-96-012 is a state law that "regulates insurance."

To be deemed a law that "regulates insurance" and thus avoid preemption, a state law must satisfy two requirements. "First, the state law must be specifically directed toward entities engaged in insurance. . . . Second, . . . the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003). Because WAC 284-96-012 meets both of these *Miller* requirements, it avoids ERISA preemption.

### a) "Directed Toward Entities Engaged in Insurance"

MetLife argues that the Program is not directed towards insurers because plan sponsors and administrators (i.e. Providence) are not insurers and plan documents are not insurance contracts. The Seventh Circuit rejected a virtually identical argument in *Fontaine* and I adopt its reasoning here. The *Fontaine* court held that the regulation at issue was specifically directed toward entities engaged in insurance "because it is 'grounded in policy concerns specific to the insurance industry.'" *Fontaine*, 800 F.3d at 887 (quoting *Ward*, 526 U.S. at 372). The Seventh Circuit reasoned that the provision "regulates, indeed prohibits, discretionary clauses in health and disability insurance policies, so it regulates insurers 'with respect to their insurance practices.'" *Fontaine*, 800 F.3d at 887 (quoting *Miller*, 538 U.S. at 334). Furthermore, in *Miller*, the Supreme Court rejected a similar argument to the one that MetLife is making here: "Regulations 'directed toward' certain entities will almost always disable other entities from doing, with the regulated entities, what the regulations forbid; this does not suffice to place such regulation outside the scope of ERISA's saving clause." 538 U.S. at 335–36 (footnote omitted).

Furthermore, although no Washington state court has construed WAC 284-96-012 in terms of the two prong *Miller* test, the U.S. District Court for the Western District of Washington has done so and

has determined that the regulation is directed at entities engaged in insurance. *See Murray v. Anderson Bjornstad Kane Jacobs, Inc.*, 2011 WL 617384 at *5 (W.D. Wash, Feb. 10, 2010); *Landree v. Prudential Ins. Co. of America*, 833 F. Supp. 2d 1266, 1274 (2011). I agree with those decisions and likewise hold that WAC 284-96-012 meets the first *Miller* requirement.

### b) "Affects Risk Pooling Between the Insurer and the Insured"

A law "substantially affect[s] the risk pooling arrangement between the insurer and the insured" when it alters "the scope of permissible bargains between insurers and insureds." *Miller*, 538 U.S. at 341–42, 338–39. Discretionary bans affect the risk pooling arrangement because they likely "lead to a greater number of claims being paid . . . increasing the benefit of risk pooling for consumers." *Standard Ins. Co*, 584 F.3d at 845; *see also Fontaine*, 800 F.3d at 888 ("By prohibiting discretionary clauses in insurance policies, [the regulation] alters the scope of permissible bargains and dictates the conditions under which risk is assumed in the insurance market."). WAC 284-96-012 satisfies the second prong of the *Miller* test because the prohibition on discretionary clauses will remove the deferential standard of review, which will in turn likely "lead to a greater number of claims being paid. More losses will thus be covered, increasing the benefit of risk pooling for consumers." *Murray*, 2011 WL 617384, at *4; *see also Landree*, 833 F. Supp. 2d at 1274. Accordingly, I reject MetLife's third argument against applying WAC 284-96-012's ban on discretionary clauses to the Program.

### iv) Whether the policy at issue is "disability insurance" such that WAC 284-96-012 applies

Finally, MetLife argues that even if WAC 284-96-012 is applied to the Program, the group life and AD&D policy that funds the Participating Life and AD&D Insurance Plan would not fall under the definition of "disability insurance" in the Washington Insurance Code, rather the policy would more accurately be defined as "life insurance." As life insurance, MetLife argues, the WAC 284-96-012 ban on discretionary clauses would not apply. The issue, therefore, is whether to classify the group life and

13 –OPINION AND ORDER

AD&D policy as disability insurance or as life insurance. If the policy is disability insurance, then the WAC 284-96-012 ban on discretionary clauses in disability insurance policies would void the grant of discretion to MetLife found in Section 9.2, and the standard of review would be *de novo*. However, if the Plan is life insurance, then the WAC 284-96-012 ban would not apply, the grant of discretion would remain intact, and the standard of review would be abuse of discretion.

The Washington Insurance Code defines disability insurance as "insurance against bodily injury, disablement or death by accident, against disablement resulting from sickness, and every insurance appertaining thereto . . . ." WASH. REV. CODE. ANN. § 48.11.030 (West). MetLife argues that the Participating Life and AD&D Insurance Plan, including the group life and AD&D policy, would more appropriately fall under the Code's definition of life insurance, which is "insurance on human lives and insurances appertaining thereto or connected therewith. . . . [including] additional benefits in event of death by accident [and] additional benefits in event of the total and permanent disability of the insured . . . ." WASH. REV. CODE. ANN. § 48.11.020 (West).

Both MetLife and Dr. Osborn rely on *Gomez v. Life Insurance Company of North America*, 84 Wash. App. 562, 928 P.2d 1153 (Wash. Ct. App. 1997). One of the issues before the court in *Gomez* was whether the plaintiff's accident policy qualified as life insurance under RCW 48.11.020 or disability insurance under RCW 48.11.030. *See id.* at 1155. *Gomez* ultimately held that the accident policy at issue was disability insurance because it more appropriately fit under the definition set forth in RCW 48.11.030. *Id.* In reaching its decision, the court explained that it was appropriate to "determine the nature of the insurance by the dominant purpose of the policy as reflected by the risk or contingency insured against[.]" *Id.* ("[I]f the risk insured against is accidents, the inclusion of accidental death benefits does not make a policy one of life insurance."). Importantly, the court stated that "if there is a life insurance policy that also has additional benefits in the case of death by accident, *the provisions*

14 –OPINION AND ORDER

*governing individual disability insurance do not apply*; rather, the life insurance statutes govern. The predicate is that general life insurance is already provided in the policy." *Id.* at 1156 (emphasis added). Here, the group life and AD&D policy provides both supplemental life insurance coverage as well as AD&D coverage to PHS employees. However, the policy's dominant purpose is to protect against the loss of life, even though the policy also provides additional benefits of dismemberment. This is evidenced by the language of the Participating Life and AD&D Insurance Plan itself, which is characterized as a "life insurance" plan that provides "additional benefit[s]" in the form of accidental death and dismemberment insurance. (The Program, Doc. 18, Ex. A at 66, ¶ E-1; Minor Decl., Doc. 18, Ex. C at 1, 23–31.) The fact that a policy provides disability benefits does not preclude the policy from being classified as predominately a life insurance policy. *See Gomez*, at 1155–56. Furthermore, the Participating Life and AD&D Insurance Plan fits squarely within the RCW 48.11.020 definition of a life insurance plan. WASH. REV. CODE. ANN. § 48.11.020 (West) (defining life insurance to include those policies that contain "additional benefits in event of death by accident [and] additional benefits in event of the total and permanent disability of the insured").

      Dr. Osborn argues that this court can label the policy as *both* disability insurance *and* life insurance. In doing so, Dr. Osborn argues, the court should apply the WAC 284-96-012 discretionary clause ban to those aspects of the policy that constitute disability benefits, including the Participating Life and AD&D Insurance Plan. However, as noted above, when there is an insurance regulation that is applied to one type of insurance policy but not the other, as is the case here, the court must "determine the nature of the insurance by the dominant purpose of the policy as reflected by the risk or contingency insured against." *Gomez*, 928 P.2d at 1155. Even though a policy may fit the definition of both disability insurance and life insurance, *Gomez* did not leave available the option of applying an insurance regulation to one part of the policy and not the other part. *See id.* Instead, the court in *Gomez* determined

15 –OPINION AND ORDER

what the dominate purpose of the policy was and applied the appropriate Washington law that governed that type of policy. I will do the same here. The group life and AD&D policy at issue is a life insurance policy that includes "additional benefits in the case of death by accident." *Id.* at 1156. The group policy provides basic and supplemental life insurance coverage as well as basic AD&D coverage to eligible PHS employees and their dependents. Thus, the Participating Life and AD&D Insurance Plan is life insurance, rather than disability insurance, under Washington law. *Id.* ("[I]f there is a life insurance policy that also has additional benefits in the case of death by accident . . . the life insurance statutes govern."); *see also* WASH. REV. CODE. ANN. § 48.11.020 (West) ("For the purposes of this code, the transacting of life insurance includes . . . additional benefits in event of death by accident; [and] additional benefits in *event of the total and permanent disability of the insured* . . . .") (emphasis added). Therefore, the discretionary clause ban in WAC 284-96-012, which applies only to disability insurance policies, does not apply to Section 9.2 and abuse of discretion review applies.

      Dr. Osborn contends such a holding is contrary to statements made by the Washington Insurance Commissioner relating to the adoption of WAC 284-96-012 and other statutes. In connection with the adoption of WAC 284-96-012, the Commissioner made several statements that Dr. Osborn contends are evidence that the Commissioner's intention was to be very broad in banning discretionary clauses in ERISA policies. (Consise [*sic*] Expanatory [*sic*] Statement, Doc. 26, Ex. A.) Notably, many other states' insurance regulations contain a ban on discretionary clauses that is much broader than Washington's ban. For example, the California ban on discretionary clauses broadly applies to any "policy, contract, certificate or agreement . . . that provides or funds life insurance or disability insurance coverage for any California resident." CAL. INS. CODE §10110.6(a). In contrast, Washington's ban on discretionary clauses only applies to (a) health care service contracts, (b) HMO contracts, and (c) individual and group disability insurance policies. *See* WASH. ADMIN. CODE 284-44-015, 284-46-015, 284-50-321, 284-96-

012. If the Washington Insurance Commissioner wished to ban discretionary clauses as broadly as Dr. Osborn purports, then the Commissioner should have issued a more sweeping regulation like California's that included both disability and life insurance policies. I will not infer, based on policy statements and little else, that such a sweeping regulation implicitly exists.

### III. CONCLUSION

As explained above, I reject each one of Plaintiff Osborn's three theories for *de novo* review and find that abuse of discretion review is appropriate in this case. Accordingly, I DENY Plaintiff's Motion for Partial Summary Judgment on Standard of Review [14] and GRANT Defendant MetLife's Motion for Partial Summary Judgement on Standard of Review [15].

DATED this __11th__ day of February, 2016.

/s/ Michael W. Mosman_____
MICHAEL W. MOSMAN
Chief United States District Judge

17 –OPINION AND ORDER